UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDA J. RODGERS,

                              Plaintiff,

          v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. C09-5222KLS

ORDER REMANDING THE
COMMISSIONER'S DECISION TO
DENY BENEFITS FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

Plaintiff, Linda J. Rodgers, has brought this matter for judicial review of the denial of her

application for disability insurance benefits.  The parties have consented to have this matter

heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil

Procedure 73 and Local Rule MJR 13.  After reviewing the parties' briefs and the remaining

record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 60 years old.[1] Tr. 23.  She has a college education and past work

experience as a bookkeeper, an administrative assistant and a retail assistant manager. Tr. 123,

126, 399.

On January 24, 2001, plaintiff filed an application for disability insurance benefits,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER - 1

alleging disability as of December 1, 1998, due to memory loss, poor concentration, rheumatoid arthritis, severe pain, limited movement, and an inability to walk. Tr. 32, 102-04, 117.  Her application was denied initially and on reconsideration. Tr. 23, 28, 32, 42, 50.  A hearing was held before an administrative law judge ("ALJ") on March 16, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert, and at which a vocational expert appeared but did not testify. Tr. 396-414.

On May 3, 2007, the ALJ issued a decision in which he determined plaintiff to be not disabled, because as of September 30, 1999, plaintiff's date last insured, the medical evidence in the record failed to establish the existence of a medically determinable impairment, which could be expected to produce plaintiff's symptoms. Tr. 32-37.  On January 18, 2008, the Appeals Council granted plaintiff's request for review, remanding the matter for further administrative proceedings. Tr. 38-40.  A second hearing was held before a different ALJ on May 16, 2008, at which plaintiff, represented by counsel, appeared and testified, as did the same medical expert[2] and a different vocational expert. Tr. 415-47.

On August 25, 2008, that ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

> (1)   at step one of the sequential disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of disability through her date last insured; and
>
> (2)   at step two, prior to the expiration of plaintiff's insured status, the medical evidence in the record failed to establish the existence of a medically determinable impairment, which reasonably could be expected to produce her symptoms.

---

[2] As pointed out by defendant, while the transcript for the second hearing lists a medical expert with a different first name, this actually appears to be the same medical expert. See Tr. 240, 396, 405, 415, 436.

[3] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

ORDER - 2

Tr. 17-21.  Plaintiff's request for review was denied by the Appeals Council on February 10, 2009, making the ALJ's decision the Commissioner's final decision. Tr.6; 20 C.F.R. § 404.981.

On April 16, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#2, #4-#5).  The administrative record was filed with the Court on August 10, 2009. (Dkt. #14).  Plaintiff argues the second ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

> (a)  the ALJ erred in rejecting plaintiff's allegations of disability as groundless at step two of the sequential disability evaluation process;
>
> (b)  the ALJ erred by improperly rejecting the medical source opinion evidence in the record;
>
> (c)  the ALJ erred in assessing plaintiff's credibility; and
>
> (d)  the ALJ erred in failing to recognize plaintiff met the definition of disability under the Commissioner's Medical-Vocational Guidelines (the "Grids").

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status[4] expired.  Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of September 30, 1999.  Tidwell, 161 F.3d at 601.

II.   The ALJ's Step Two Analysis

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.

---

[4] The Social Security Act provides in relevant part that "[e]very individual who . . . is insured for disability insurance benefits," who "has filed [an] application for disability insurance benefits" and "who is under a disability . . . , shall be entitled to" such benefits. 42 U.S.C. § 423(a).  If an individual is "neither fully nor currently insured, no benefits are payable." 20 C.F.R. § 404.101(a).  Insurability is determined in accordance with the number of "quarters of coverage" the individual has. See 42 U.S.C. § 423(c), 20 C.F.R. § 404.130(a); see also 20 C.F.R. § 404.101(a) (whether required insured status has been obtained depends on number of quarters of coverage ("QCs") acquired), 20 C.F.R. § 401.102 (referring to quarter as calendar quarter, i.e., period of three calendar months).  The number of QCs the individual is "credited with" is "based on the wages" he or she is paid, as well as on any "self-employment income" derived "during certain periods." 20 C.F.R. § 404.101(b).  "[A]t least 6 QCs but not more than 40 QCs" is needed "to be fully insured," and "fully insured status begins . . . as of the first day of the calendar quarter in which" the "last needed QC" is acquired. 20 C.F.R. § 404.110(b)(1), (e).

ORDER - 4

Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §

404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has

"no more than a minimal effect on an individual['s] ability to work." See SSR 85-28, 1985 WL

56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d

303, 306 (9th Cir.1988).  Plaintiff has the burden of proving her "impairments or their symptoms

affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60

(9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  However, the step two

inquiry is a *de minimis* screening device used for the purpose of disposing of groundless claims.

Smolen, 80 F.3d at 1290.

As noted above, the ALJ made the following determination at step two of the sequential

disability evaluation process:

> **Prior to the expiration of the claimant's insured status on September 30,**
> **1999, the objective medical evidence fails to establish the existence of a**
> **medically determinable impairment that could reasonably be expected to**
> **produce her symptoms . . .**

Tr. 19 (emphasis in original).  In explaining his step two determination, the ALJ further found in

relevant part:

> The Appeals Council remanded the case, in part, from concern that the
> impairments reported by Dr. [Stephen R.] Shaul[, M.D., plaintiff's treating
> physician,] on April 28, 2000 (axial symptoms of neck and low back with
> peripheral complaints of problems in the hands, wrists, and knees of two years
> duration) may have been more severe two years previously . . .

> However, none of the medical records are dated from May 19, 1997, to March
> 19, 1999.  The symptoms in question were not mentioned when the claimant
> was seen on December 7, 1999, for cold symptoms (complaints of a
> productive cough, nasal congestion, some sore throat, and both ears
> uncomfortable).  She did not have an elevated temperature . . .  A reasonable
> inference is that the claimant was either without the orthopedic symptoms at

ORDER - 5

issue or that her symptoms were less severe and less of a medical concern than possible diabetes mellitus symptoms or a severe cold, respectively.

On March 14, 2000 (almost six months after her insured status expired on September 30, 1999), the claimant did complain of a painful and swollen left wrist.  However, this was reported as being present "for about a month now.  It has been intermittent, but occurring more frequently and lasting longer than it used to."  Left wrist x-ray did not show any bony abnormality, fracture, or dislocation.  The diagnosis was probable tendonitis.  Treatment consisted of Vioxx 25 mg once a day; splinting with an Ace bandage wrap; and elevating her hand as much as possible, with recheck in two weeks . . .  This report implies that the claimant's left wrist pain and other symptoms either began or increased a month previously.  Interestingly, even if the claimant had increased symptoms, her presentation on March 14, 2000, did not merit a very severe diagnosis or aggressive acute care.

On April 28, 2000, the claimant complained of stiffness in the ankles, hands, and left wrist, with morning stiffness lasting five to ten minutes . . .  More specific symptoms are listed later, but these began "about six months ago" and "about three months ago."  Both of the specific descriptions would be after the claimant's insured status had expired on September 30, 1999.

I give significant weight to the opinion of the medical expert, who reviewed the entire record and heard the testimony.  The medical expert at the May 16, 2008, hearing, Dr. [Frank] McBarron, testified that the record does not support extrapolating the claimant's diagnosis from April 2000 and subsequent records back to prior to the expiration of the claimant's insured status on September 30, 1999.

The reference by Dr. Shaul on April 28, 2000, to "two years" is a recitation of the claimant's complaint and not a clinical finding by the doctor . . .

I conclude that the medical record does not support a finding of a medically determinable severe impairment prior to the expiration of the claimant's insured status on September 30, 1999.  The precise beginning date of the claimant's severe impairments cannot be determined with a medical certainty.  It is possible the claimant had some symptoms prior to September 30, 1999.  However, reading the contemporary medical records together, it is unlikely that such symptoms affected the claimant continuously or were more severe in her mind than a severe cold.  She did not seek medical care for the alleged disabling condition prior to March 2000.  When the claimant first sought medical care in March 2000, her symptoms had increased, but still were not treated aggressively.  Her descriptions of the more severe symptoms all had starting dates after September 30, 1999.  The only references to earlier symptoms were described with benign terms such as "stiffness" and "intermittent."

ORDER - 6

. . .

Accordingly, the objective medical evidence contained in the record does not
establish the existence of a medically determinable impairment through the
date last insured that could have reasonably been expected to produce the
claimant's symptoms.

Tr. 20-21.

Plaintiff argues the ALJ's determination that she did not have a significant impairment

through her date last insured was contrary to the medical expert's testimony, the treating and

examining medical sources in the record and her own testimony, and thus was improper.  For the

reasons set forth below, the undersigned agrees the ALJ erred in light of the medical expert's

testimony, but not in regard to plaintiff's testimony or the other, medical evidence in the record.

With respect to plaintiff's own testimony, as discussed in further detail below, the ALJ properly

found that testimony to be not credible.  In addition, while the ALJ is required at step two of the

sequential disability evaluation process to take into account a claimant's pain and other

symptoms (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of

the objective medical evidence in the record:

A determination that an impairment(s) is not severe requires a careful
evaluation of the medical findings which describe the impairment(s) and an
informed judgment about its (their) limiting effects on the individual's
physical and mental ability(ies) to perform basic work activities; thus, an
assessment of function is inherent in the medical evaluation process itself.  *At
the second step of sequential evaluation, then, medical evidence alone is
evaluated in order to assess the effects of the impairment(s) on ability to do
basic work activities*.  If this assessment shows the individual to have the
physical and mental ability(ies) necessary to perform such activities, no
evaluation of past work (or of age, education, work experience) is needed.
Rather, it is reasonable to conclude, based on the minimal impact of the
impairment(s), that the individual is capable of engaging in SGA [substantial
gainful activity.

SSR 85-28, 1985 WL 56856 *4 (emphasis added).

ORDER - 7

In terms of the medical opinion source evidence in the record other than that provided by

the medical expert, as pointed out by the ALJ it shows little, if any, in the way of more than *de*

*minimis* work-related limitations stemming from plaintiff's alleged impairments prior to or as of

her date last insured. See Tr. 185-89, 195, 197, 199-200, 202-03, 205, 207-10, 212-14, 224, 234-

36, 254-59, 261, 268-69, 283-86, 291-92, 304, 332, 336, 346-47, 341, 343, 350-51, 353, 362-63,

374-76, 383-84.  Indeed, plaintiff has failed to note any specific findings contained in this other

medical opinion source evidence that would indicate otherwise.

    As for the testimony of the medical expert, however, the undersigned finds the ALJ failed

to properly evaluate it.  At the first hearing, the medical expert, Dr. Frank McBarron, testified

that the evidence in the record was "so poor in terms of trying to make a decision" concerning

plaintiff's condition prior to or as of her date last insured, and that given the sparse record he

could not make any diagnosis for that period. Tr. 407-08.  At the second hearing, Dr. McBarron

testified again that there was "very little" in terms of a "showing of significant aches and pains or

rheumatology problems in the medical record prior to" the date last insured. Tr. 437.  He further

testified at the second hearing that as of a late April 2000 visit to Dr. Shaul, it was "pretty clear"

she had "rheumatoid disease." Tr. 213-14, 437-38.

    In terms of inferring the onset of "a significant disease" of "a disabling nature" on or

before plaintiff's date last insured, Dr. McBarron testified in relevant part that:

> . . . [T]here's little doubt in my mind that [rheumatoid disease] existed prior to
> 9-30-99.  The problems is, of course, degree [sic] is how bad. . . . I felt she
> met [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"),[5] § 14.09]
> beginning spring of 2000.  If I had to refer back to 9-30-99 there just isn't
> enough data for me to do that. . . . It's just not there.  I don't know what to

---

[5] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to
see if they meet or medically equal any of the impairments contained in the Listings. 20 C.F.R § 404.1520(d);
Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or medically equal
a listed impairment, he or she is deemed disabled. Id.

ORDER - 8

say.  I know that I felt she met [L]isting 14.09[,] which is inflammatory arthritis in the spring of 2000.  Go back six months, of course I could do that but I, but it's just not in the record and I can't say that.  I can say that any rational physician would recognize . . . that it probably existed for some time but at what degree I can't speak to that.

Tr. 438-39.  Dr. McBarron went on to testify that:

> . . . I think this was sero-negative rheumatoid disease she had . . . in '99.  That doesn't speak to, to severe disease though . . . , it sure was there and I . . . am . . . put in kind of a tough bind here trying to say whether . . . she had listing-level disease six months prior to when I said she did.  It's just tough for me to say that.

Tr. 441.  Dr. McBarron testified as well, however, that "it would be reasonable to say that six months prior to [when he earlier testified plaintiff had Listing-level rheumatoid disease,] . . . she would most likely be limited to sedentary work" and "have bilateral hand problems," although with respect to the latter impairment, Dr. McBarron could not testify as to how much she would be limited in terms of hand use. Tr. 441.

Dr. McBarron's testimony regarding sedentary work and bilateral hand problems do, as plaintiff asserts, indicate he felt more than *de minimis* work-related limitations existed beginning prior to her date last insured.  Accordingly, the ALJ erred in finding Dr. McBarron had testified that the record did "not support extrapolating" plaintiff's "diagnoses from April 2000 and" later "back to prior to the expiration of" her insured status. Tr. 20-21.  This does not mean, though, that the ALJ was required to find plaintiff had a severe impairment as of her date last insured, given the lack of corroborating objective medical evidence in the record discussed above and below.  Rather, it means that remand for further consideration of Dr. McBarron's testimony in light of the evidence in the record as a whole is warranted and appropriate.

III.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

ORDER - 9

conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield</u>

ORDER - 10

1    v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

2         In general, more weight is given to a treating physician's opinion than to the opinions of

3    those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not

4    accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately

5    supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social

6    Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d

7    947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An

8    examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

9    physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute

10   substantial evidence if "it is consistent with other independent evidence in the record." Id. at

11   830-31; Tonapetyan, 242 F.3d at 1149.

12        Plaintiff argues the ALJ erred in rejecting the opinions of the other medical sources in the

13   record.  The only such source plaintiff discusses, however, is Dr. Shaul.  Specifically, she asserts

14   the ALJ erred in rejecting as merely "a recitation of" her complaints "and not a clinical finding,"

15   Dr. Shaul's late April 2000 statement that she had suffered from joint pain "[f]or the past two or

16   three years." Tr. 20, 214.  There is no error here.  As indicated, Dr. Shaul was only stating what

17   plaintiff had reported to him, and was not making an objective medical finding, although it is

18   true that a physician "must necessarily rely on [a] patient's history and subjective complaints" in

19   making a medical diagnosis. See 20 C.F.R. § 404.1529(a); Flanery v. Chater, 112 F.3d 346, 350

20   (8th Cir. 1997) (citation omitted).

21        The ALJ, furthermore, properly discounted plaintiff's credibility regarding her subjective

22   complaints as discussed below. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical

23   opinion premised on claimant's complaints where record supports ALJ in discounting claimant's

ORDER - 11

credibility); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d

595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own

accounts of her symptoms and limitations may be disregarded where those complaints have been

properly discounted).  That Dr. Shaul may not have given any indication in his treatment notes

that he did not find her to be untruthful is irrelevant, as long as the ALJ properly supported his

credibility determination as he did in this case.

In addition, it is merely speculation on plaintiff's part to assert that "given the continual

worsening of" her "symptoms over time . . . , it is entirely reasonable that" she "was suffering

from severe symptoms prior to her date last insured." (Dkt. #19, p. 18).  That something may be

reasonable in terms of conjecture is not at all the same thing as being reasonable based on actual

objective medical evidence in the record.  Further, while as discussed above, the testimony of Dr.

McBarron provides some evidence of significant limitations prior to plaintiff's date last insured,

that testimony cannot substitute for the lack of such evidence in Dr. Shaul's own progress notes.

The undersigned thus finds no error on the part of the ALJ here.

IV.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker,

694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility

determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility

determination where that determination is based on contradictory or ambiguous evidence. Id. at

579.  That some of the reasons for discrediting a claimant's testimony should properly be

discounted does not render the ALJ's determination invalid, as long as that determination is

supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

ORDER - 12

reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a

whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir.

2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. Id.

Plaintiff argues the ALJ did not provide valid reasons for discounting her credibility, but

only rejected her testimony based on "a vague assertion that it was not supported by the medical

evidence." (Dkt. #19, p. 19).  A determination that a claimant's complaints are inconsistent with

the medical evidence in the record can satisfy the clear and convincing requirement. Regennitter

v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  However, pain testimony may

not be rejected "*solely* because the degree of pain alleged is not supported by objective medical

evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan,

947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari,

261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  The same

is true with respect to other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42

ORDER - 13

(9th Cir. 1995) (finding that while holding in <u>Bunnell</u> was couched in terms of subjective pain complaints, its reasoning extended to claimant's non-pain complaints as well).

The ALJ did not err in discounting plaintiff's credibility on the basis of her testimony being inconsistent with the medical evidence in the record. <u>See</u> Tr. 21.  As discussed above, other than Dr. McBarron's testimony, the remaining medical evidence in the record fails to establish the existence of any significant work-related limitations existing prior to her date last insured.  In addition, while Dr. McBarron did testify that plaintiff would have been limited to sedentary work and would have had bilateral hand problems prior to that date, none of his testimony indicated he endorsed the completely disabling limitations plaintiff testified she had. Nor is it at all clear for the reasons also discussed above, that the ALJ would be required to accept Dr. McBarron's testimony here, although remand to make that determination in light of the medical evidence as a whole is proper in this case.

The above-stated reason for discounting plaintiff's credibility also was not "vague" by any means, as the ALJ provided a detailed summary of the medical evidence in the record prior to making that statement. <u>See</u> Tr. 20-21.  In addition to that reason, however, the ALJ noted as well that plaintiff "did not seek medical care for the alleged disabling condition prior to March 2000," and that when she did finally do so in March 2000, her symptoms "still were not treated aggressively." Tr. 21; <u>see</u> <u>Fair</u>, 885 F.2d at 603 (claimant's failure to assert good reason for not seeking treatment can cast doubt on sincerity of pain testimony); <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to prescribe or request serious medical treatment for supposedly excruciating pain); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment suggestive of lower level of pain and functional limitation).

ORDER - 14

1   V.      Determination of Disability at Step Five

2           If a claimant cannot perform his or her past relevant work, at step five of the disability

3   evaluation process the ALJ must show there are a significant number of jobs in the national

4   economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20

5   C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by

6   reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d

7   at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used

8   if they "completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101

9   (emphasis in the original).

10          Plaintiff argues that in light of the testimony of Dr. McBarron (that prior to her date last

11  insured, she would have been limited to sedentary work and would have had bilateral problems

12  with her hands) and the testimony of the vocational expert at the second hearing (that if plaintiff

13  had those limitations, she would not be able to perform other jobs (see Tr. 444)), the ALJ should

14  have found her disabled at step five of the sequential disability evaluation process.  Plaintiff also

15  argues she should be found disabled under the Grids, due to her age, lack of recently completed

16  education, non-transferability of skills, and, again, limitation to sedentary work. See 20 C.F.R.

17  Pt. 404, Subpt. P., App. 2, § 201.14.

18          But it is not at all clear, as discussed above, that the ALJ would be required to adopt

19  either of the limitations testified to by Dr. McBarron.  In addition, the vocational expert assumed

20  plaintiff would be restricted to only occasional use of her hands in so testifying (see Tr. 444),

21  whereas Dr. McBarron was not able to testify as to the severity of any such restriction (see Tr.

22  441).  Nevertheless, if on remand the Commissioner does determine that plaintiff has a severe

23  impairment and that she is incapable of returning to her past relevant work, a determination as to

24

25

26

ORDER - 15

1    whether she can perform other work at step five shall made as well.

2    VI.    This Matter Should Be Remanded for Further Administrative Proceedings

3            The Court may remand this case "either for additional evidence and findings or to award

4    benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

5    proper course, except in rare circumstances, is to remand to the agency for additional

6    investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

7    omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

8    unable to perform gainful employment in the national economy," that "remand for an immediate

9
10   award of benefits is appropriate." Id.

11          Benefits may be awarded where "the record has been fully developed" and "further

12   administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

13   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

14   where:

15
16          (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
            claimant's] evidence, (2) there are no outstanding issues that must be resolved
17          before a determination of disability can be made, and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled were such
18          evidence credited.

19   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

20   Because issues still remain with respect to the severity of plaintiff's impairments and in regard to

21
22   the medical evidence in the record regarding those impairments, remand to the Commissioner for

23   further administrative proceedings in this matter is appropriate.

24                                         CONCLUSION

25          Based on the foregoing discussion, the Court finds the ALJ improperly determined

26   plaintiff to be not disabled.  Accordingly, the ALJ's decision hereby is REVERSED and

ORDER - 16

1    REMANDED to the Commissioner further administrative proceedings in accordance with the

2    findings contained herein.

3         DATED this 30th day of March, 2010.

4

5

6

7                                              Karen L. Strombom
                                               United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 17